**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FB SELECT, LLC.**, a New York limited liability company., | |
| Plaintiff, | |
| v. | Case No.: |
| **CY Ventures LLC**, a New York Limited Liability Company, **Joey Nissanian, and JOHN DOES 1-10,** individually or as corporations / business entities, | |
| Defendants. | |

## COMPLAINT

Plaintiff, FB Select, LLC., d/b/a Front Row Group ("Plaintiff" or "Front Row"), brings this action against Defendants CY Ventures, LLC; the Principal of CY Ventures LLC, Joey Nissanian ("Nissanian"); and John Does 1-10 (collectively, "Defendants") for: (1) False Advertising in violation of the Lanham Act, 15 USC §1125(a)(1)(A)(B); (2) Tortious Interference with Prospective Economic Advantage; and (3) Tortious Interference with Contract. These claims arise from Defendants' unlawful sale on the internet of materially different, unsafe human supplement products sourced by fraudulent means. In support of its complaint, Front Row alleges as follows:

## PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business located in New York, New York.

2.    CY Ventures LLC ("CY Ventures") is a limited liability company organized under the laws of New York. The corporate documents filed with the New York Secretary of State claim the principal place of business is 50 Holt Drive, Stony Point, NY, United States, 10980. CY Ventures operates and or assists in the operation of an online storefront on www.amazon.com ("Amazon") that is currently called "Z's Essentials" (the "Amazon Storefront"). The Amazon Storefront can be accessed at https://www.amazon.com/sp?seller=A3G5NP1LKGJ9F6. CY Ventures conducts business throughout the United States, including in the State of New York.

3.    Joey Nissanian ("Nissanian") is the principal and owner of the limited liability company CY Ventures and directs all activities of CY Ventures LLC.  Nissanian resides at 3 River Road, Montebello, NY 10901.

4.    Front Row believes that other individuals or entities may be responsible for the events and occurrences referred to herein. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Front Row. Therefore, Front Row sues these defendants by the fictitious names John Does 1 through 10. When the true names, involvement and capacities of these parties are ascertained, Front Row will seek leave to amend this Complaint accordingly. If Front Row does not identify any such parties, it will dismiss these defendants from this action.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S. Code §§ 1331 and 1367. Front Row's federal claim is predicated on the Lanham Act, 15 U.S.C. §1125(a), and its claims arising under the state of New York are so substantially related to its federal claims such that they form part of the same case or controversy under Article III of the US Constitution.

6.      The Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of New York and have established sufficient minimum contacts with New York, by advertising and selling substantial quantities of unlawfully obtained products to consumers within New York through a highly interactive commercial website with knowledge that Front Row is located in New York and is harmed in New York as a result of Defendants' unlawful procurement and sales of products to New York Residents. Defendants know that Front Row is located in New York, among other reasons, because they received cease and desist letters informing them that SFI / Klaire Labs is located in New York and is harmed in New York by their unlawful activities. Front Row's claims arise out of Defendant's substantial and regular sales of illegally obtained products that cause direct harm to Front Row.

7.      Venue is properly found in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this judicial district, or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## <u>FACTUAL ALLEGATIONS</u>
**Front Row, Soho Flordis International ("SFI") and its Trademarks, and the Amazon Platform**

8.      Front Row is the exclusive distributor for products manufactured by Soho Flordis International ("SFI") under the Klaire Labs Brand on the Amazon platform[1].  The Klaire Labs Brand has held and maintained its registered trademarks, U.S. Registration Nos. 5551790 (Klaire Labs) and 2426507 (Klaire Laboratories)  since at least as early 1999 for its health and wellness focused dietetic foods and beverage products (hereinafter referred to as the "Klaire Products"). The marks are registered, valid and enforceable.

---

[1] Klaire Labs was sold to ProThera, Inc. in 2004 and later acquired by Soho Flordis International (SFI) in 2013.

9.     SFI has entrusted Front Row with the exclusive authority to resell Klaire Products on the Amazon platform via its Amazon storefront and also the right to enforce the Klaire Labs Brands' intellectual property rights on the Amazon platform through an exclusive contract between the parties (the "Agreement").

10.     SFI manufactures and produces plant-based enzymes that are consumed orally to assist in the breakdown of proteins, fats, carbohydrates, sugars and fibers to reduce IBS symptoms and improve gut health.

11.     SFI allows its products to be sold to end-user consumers in the United States only by sellers whom SFI has expressly authorized to sell Klaire Products ("Authorized Sellers"). These sellers are strictly limited exclusively to Health Care Providers (HCPs) and Plaintiff, Front Row.

12.     Health Care Providers are required to execute SFI's Sales and Distribution Agreement and to adhere to the related HCP Product Purchase Terms and Conditions.[2]

13.     Front Row's exclusive Amazon Seller Agreement requires Front Row to adhere to unique, heightened quality controls tailored specifically to the nature of selling products on the Amazon platform and to engage in extensive education and training to provide insight and support to customers, in addition to the requirements of the HCP Product Purchase Terms and Conditions.

14.     Among other things, the HCP Product Purchase Terms and Conditions state:

"HCP may only sell Product to HCP's individual clients or patients in the United States that HCP reasonably, in good faith, believes are purchasing Product: (i) for personal use, (ii) in quantities reasonable for an individual's personal use; (iii) to end-users of the Product."[3]

---

[2] See, https://us.sfihealth.com/legal/sales-distribution/.
[3] Id, at ¶5.

15.     The HCP Product Purchase Terms and Conditions also state: "HCP shall not advertise, list, offer for sale, sell or distribute any Product via the Internet, except with SFI's prior written approval."[4]

16.     The HCP Product Purchase Terms and Conditions also state:

HCP shall not sell Product to anyone who HCP suspects, knows, or reasonably should know, intends to re-sell or redistribute the Product. HCP shall only sell the Product in bona fide retail transactions with patients under HCP's care. Without limiting the generality of the foregoing, distribution of Product for resale is strictly prohibited.[5]

17.     SFI allows Front Row and other Authorized Sellers to sell SFI products only through approved channels and requires Front Row and Authorized Sellers to abide by agreements, policies and other rules that impose requirements relating to quality controls, customer service, and other sales practices (the "SFI Rules").

18.     The SFI Rules prohibit Authorized Sellers from selling Klaire Products to persons or entities who are not Authorized Sellers, but who intend to resell the Klaire Products ("Unauthorized Resellers"), a practice known as "product diversion."

19.     By ensuring that all Authorized Sellers have contractually agreed only to resell Klaire Products directly to patients and specifically restricts the sale of products to Unauthorized Sellers, SFI ensures that all Authorized Sellers follow certain branding, quality-control and customer service requirements.

20.     Unauthorized Resellers are not contractually required to follow the same branding, customer service and quality control standards and could ship poor-quality products to consumers

---

[4] Id at ¶6.
[5] Id at ¶7.

and cause consumers to associate the SFI / Klaire Labs Brands with less-expensive, lower quality retailers.

21.     Therefore, the restrictions on the resale in the SFI Rules are important and material terms of those agreements and part of the bargained for consideration that SFI receives from Front Row in exchange for selling them Klaire Products and giving them the right to resell those products in an improved manner dedicated to protecting consumer safety.

22.     SFI devotes a significant amount of time, energy and resources toward protecting the value of its brands, products, name and reputation. By allowing end consumers to purchase Klaire Products only from Front Row or HCPs that are Authorized Sellers required to follow the quality controls and other requirements in the SFI Rules, SFI ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the SFI and Klaire Labs Brands. In the highly competitive markets for health care and supplement products, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

**Front Row and the Amazon Platform**

23.     SFI has appointed Front Row as its exclusive seller for Klaire Products on the Amazon platform. Defendants are not authorized to resell Klaire Products on Amazon; thus, any sales by Defendants are unauthorized and illegal.

24.     Front Row, per the Agreement, is the sole agent responsible for management of the SFI / Klaire Labs Brands and corresponding product listings on the Amazon platform, as well as the agent responsible for enforcing the SFI and Klaire Labs Trademarks on the Amazon platform.

25.     Front Row has spent considerable resources to market and protect this Agreement and its relationship with SFI, which is a brand that has become a symbol of quality and

effectiveness in the industry. Because of the quality, reliability and effectiveness of Klaire Products, consumers trust the brands and associate SFI and Klaire Labs with high quality products. SFI and Klaire Labs strive to maintain and grow consumer trust and goodwill on the Amazon platform, specifically via their Agreement with Front Row.

26.    In exchange for its exclusive rights, among other things, Front Row is required to adhere to unique, heightened quality controls tailored specifically to the nature of selling products on the Amazon platform and to engage in extensive education and training to provide insight and support to customers. Put simply, Front Row is held to the highest, most stringent standard of operating procedures conveyed and enforced by SFI and Klaire Labs for the resale of Klaire Products. These procedures help to protect the Klaire Labs Brand, but importantly also serve to protect consumers from the harmful products offered by Unauthorized Sellers such as the Defendants.

27.    Because of the nature of the products SFI / Klaire Labs sells, the brands maintain extensive oversight and involvement in its products from the start of their journey all the way to the end user. These products are ingested into the human body; as a result, there is a risk of increased harm to the consumer from inauthentic and unauthorized products. Thus, ensuring the products' quality, safety, and efficacy is of paramount concern to SFI / Klaire Labs and Front Row for the purpose of protecting the highly regarded Klaire Labs Brand and, more importantly, the brand's consumers. Klaire Labs has entrusted Front Row with this responsibility and has required Front Row to adhere to its standards and procedures in furtherance of this outcome.

**Defendant CY Ventures' Unlawful Sales of Klaire Products**

28.    CY Ventures and Nissanian have and continue to willfully resell illegally and fraudulently sourced Klaire Products on Amazon without any authorization from SFI. In fact, Front

Row's Brand Protection Team has repeatedly advised CY Ventures and Nissanian of the valid and enforceable Agreement between SFI and Front Row through several cease-and-desist letters. Specifically, demand letters were sent on May 13, 2024 via email and certified mail. On May 16, 2025, counsel for CY Ventures, Tuvia Rotberg ("Rotberg") reached out to the Brand Protection Team to confirm the receipt of the previous demand letters and assert his representation of CY Ventures. On August 16, 2024, a final notice of infringement was sent expressly disclosing the existence of the relationship between SFI / Klaire Labs and Front Row and explaining the tortious interference and damages caused by CY Ventures' improper sales activities.

29.     A notice of preservation and final demand to cease all unlawful sales was sent to CY Ventures' counsel, Rotberg, on August 22, 2024, outlining all of the foregoing notices and communications and provided CY Ventures and Nissanian notice of this lawsuit. All of this communication has expressly informed CY Ventures and Nissanian of the relationship between Klaire Labs and Front Row and explained the tortious interference caused by their activities. CY Ventures, Nissanian, and their counsel have, nevertheless, willfully ignored Plaintiff's attempts to amicably resolve this matter, refused to respond to communications in writing to demonstrate good faith negotiations, and have continued selling Klaire Products despite having been made aware of the Agreement.

30.     CY Ventures and Nissanian's unauthorized resales harm Front Row and  Klaire Labs' reputations, the brand's image, and consumers who believe they are purchasing a Klaire Labs Product directly from the manufacturer or an authorized reseller approved of by Klaire Labs such as Front Row. Consumers may be unaware that they are purchasing Klaire Labs Products that do not have the warranties and guarantees that accompany genuine and authentic Klaire Labs Products, nor are subjected to the quality control standards that Authorized Resellers like Front

Row are required to adhere to. Thus, this cause of action seeks to put an end to the willful and improper sales by Defendant to unsuspecting consumers and cease the harm caused to Klaire Labs and Front Row.

**John Doe HCP Defendants Resell Klaire Products to Unauthorized Sellers**

31.    John Doe HCP Defendants are, upon information and belief, HCPs / Authorized Sellers who have agreed to the SFI Rules. Under the SFI Rules they agreed to, John Doe HCP Defendants are prohibited from selling Klaire Products to Unauthorized Resellers for purpose of resale.

32.    John Doe HCP Defendants' agreements not to resell Klaire Products to Unauthorized Resellers are material, bargained-for consideration that John Doe HCP Defendants agreed to in exchange for SFI / Klaire Labs' sale of Klaire Products to Defendants.

33.    Despite agreeing not to resell Klaire Products to Unauthorized Resellers, John Doe HCP Defendants have resold and continue to resell Klaire Products to various Unauthorized Resellers, including CY Ventures and Nissanian.

34.    These Unauthorized Resellers then resell the Klaire Products on third-party storefronts, such as on Amazon or other websites that are inconsistent with SFI / Klaire Labs' standards for branding, quality control, and customer service.

35.    For example, John Doe HCP Defendants have sold Klaire Products to one or more Amazon sellers, including CY Ventures and Nissanian, who are reselling, have sold, and continue to sell high-volume of individual Klaire Products based on public Amazon sales data.

36.    CY Ventures, Nissanian, and other Unauthorized Resellers employ standards that are inconsistent with SFI / Klaire Labs' standards for branding, quality control, and customer

service, which SFI / Klaire Labs contractually requires all Authorized Sellers to follow. For instance, Authorized Sellers are required to provide heightened customer service requirements, they must undertake rigorous inspection requirements, and they may not repackage or otherwise alter or tamper with Klaire Products or packaging, including with respect to UPC codes or other identifying information necessary to monitor the quality of Klaire Products. Products sold by Unauthorized Sellers are not subject to these requirements, nor do they come with SFI / Klaire Labs' satisfaction guarantee on the products.

37.     John Doe HCP Defendants are aware that they are selling Klaire Products to Unauthorized Sellers who are not end users of the product or Authorized Sellers who have been approved by the brand to sell Klaire Products, but rather intend to resell the Klaire Products through online retailers. Accordingly, the SFI / Klaire Labs Contracts agreed to by the John Doe HCP Defendants prohibit them from reselling Klaire Products to these Unauthorized Sellers.

38.     For example, a large quantity of Klaire Products are offered for sale on Amazon, suggesting that CY Ventures and other Unauthorized Resellers are acquiring large quantities of Klaire Products from one or more John Doe HCP Defendants who trade in a significant amount of Klaire Products.

39.     The John Doe HCP Defendant Sellers who are supplying Unauthorized Resellers are materially breaching the SFI / Klaire Labs Contracts that they signed because the John Doe HCP Defendants are only permitted to sell to their patients as professional, *licensed* Health Care Practitioners.

40.     As such, when Unauthorized Resellers purchase products from John Doe HCP Defendants diverters, the John Doe HCP Defendants are in breach of their contract with SFI.

41.     Because the John Doe HCP Defendants are in breach of their contract with SFI when they sell and distribute products to Unauthorized Resellers, the purchase of the relevant inventory of Klaire Products is *NOT* a lawful first sale.

**Front Row Requires Discovery to Conclusively Determine Defendants' Identities**

42.     After identifying a large volume of unauthorized Klaire Products being sold on the aforementioned unauthorized websites, SFI / Klaire Labs began an investigation to identify the John Doe HCP Defendants supplying these Unauthorized Resellers as well as Nissanian, the Principal of CY Ventures.

43.     However, product diverters like John Doe HCP Defendants and Unauthorized Resellers like CY Ventures and Nissanian go to great lengths to avoid being detected by brands and consumers.

44.     Despite John Doe HCP Defendants' efforts to hide their identities, SFI / Klaire Labs has undertaken significant efforts to connect Unauthorized Resellers to specific Authorized Sellers. Those efforts have included reviewing sales records and corresponding with its distributors, searching open-source and subscription services, and performing test purchases.

45.     Through these efforts, SFI / Klaire Labs recently identified CY Ventures (as well as several other Unauthorized Amazon Storefronts) that are themselves likely connected to the John Doe HCP Defendants that are diverting products to these Unauthorized Resellers. The Unauthorized Resellers connected to John Doe HCP Defendants are, upon information and belief, in New York.

46.     However, SFI / Klaire Labs' efforts have been unsuccessful in identifying the specific John Doe HCP Defendants who are supplying the Unauthorized Resellers, as well as the identities of the individual principal(s) of CY Ventures.

47.     Unauthorized Resellers necessarily maintain certain identifying information related to their suppliers.

48.     Thus, Front Row has no alternative means aside from discovery in this lawsuit to learn the identities of the specific John Doe HCP Defendants who are supplying CY Ventures and other Unauthorized Resellers in breach of their agreement with SFI.

49.     Discovery in this matter will allow Front Row to identify each John Doe Defendant's true name and address, and Front Row will amend this Complaint accordingly when those Defendants are identified and their interest and involvement is determined.

## ONLINE MARKETPLACE CHALLENGES

50.     E-commerce retail sales have exploded over the past decade. From 2009 through the end of 2022, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 14.7%. E-Commerce Retail Sales as a Percent of Total Sales, Federal Reserve Bank of St. Louis (February 17, 2023), https://fred.stlouisfed.org/series/ECOMPCTSA.

51.     In 2022, consumers spent $1.03 trillion on e-commerce sales, a 7.7% increase from 2021. See Paul Conley, U.S. ecommerce in 2022 tops $1 trillion for first time, Digital Commerce 360 (February 17, 2023), https://www.digitalcommerce360.com/article/us-ecommerce-sales/. The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2021, United States consumers spent more than $378 billion in e-commerce sales on Amazon, which was an 18.8% increase from 2020 and 43.5% of total e-commerce sales in 2021.

52.     While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

53.    Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them. Instead, consumers must trust that the product they receive from an online order will be authentic and of the quality they expect and typically receive from the manufacturer.

54.    Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

55.    Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers. It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels. See Scott Cohn, Greed Report: Your quest for savings could land you in the "gray market," CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-yourquest-for-savings-could-land-you-in-the-gray-market.html; Alexandra Berzon et al., Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products, THE WALL STREET JOURNAL, Aug. 23, 2019, https://www.wsj.com/articles/amazon-has-ceded-controlof-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990. It is also common for unauthorized sellers to sell products that are previously used—including products retrieved from dumpsters—as "new" on online marketplaces. See Khadeeja Safdar et al., You

Might Be Buying Trash on Amazon—Literally, THE WALL STREET JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910.

56.     The business press has also reported extensively on how there is an "epidemic" of counterfeit products being sold on online marketplaces that diverters are exploiting because they know consumers trust marketplaces and think the products they are buying through the marketplaces are genuine. See Spencer Soper, Amazon Gets Real About Fakes, Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes; Jay Greene, How Amazon's quest for more, cheaper products has resulted in a flea markets of fakes, THE WASHINGTON POST, Nov. 14, 2019, https://www.washingtonpost. com/technology/2019/11/14/how-amazons-quest-more-cheaper-products-has-resulted-fleamarket-fakes/?arc404=true.

57.     The problem of sales of counterfeit and other poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of ecommerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, counterfeit goods and products that "violate a right holder's trademark or copyright" are being sold at an accelerating rate on e-commerce platforms. The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online. See Senate Finance Committee, The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf.

58.    In 2020, the Department of Homeland Security published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goodsreport_01.pdf, at 7. The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller." *Id.* at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

59.    In its 2018, 2019, 2020, 2021, and 2022 annual reports to its shareholders, Amazon acknowledged that third party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. *See* Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 2, 2023), available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/336d8745-ea82-40a5-9acc-1a89df23d0f3.pdf. Amazon conceded that these actions are "violating the proprietary rights of others" and warned its investors that it could be liable for "unlawful activities" of Amazon third party sellers.

60.    Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic. A brand owner's inability to

exercise control over the quality of its products presents serious risks to the health and safety of consumers—particularly when, as here, a brand owner's products are ingested by humans.

61.     The structure, construction, and user interface of online marketplaces also pose threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

62.     When purchasing products on an online marketplace, customers are ordinarily not informed as to whether a seller of a product is authorized by the brand owner. Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the brand owner or, at minimum, from an authorized seller that is selling under the brand owner's oversight and with the brand owner's approval. Consumers who purchase on Amazon are particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states "Brand [name of brand]" immediately under the title of the product, even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

63.     For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the brand owner's quality controls.

64.     When a consumer purchases on an online marketplace and receives a product that is damaged, defective, or of otherwise poor quality, the consumer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

65.     Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products: online product reviews. Any consumer who is dissatisfied with a product received can post a review on the marketplace for all other consumers

across the world to see. These reviews, which often remain permanently attached to products, will often criticize the brand rather than the marketplace seller that sold the product.

66.     Online product reviews significantly impact a brand's reputation. Survey results show that 82% of United States adults "sometimes" consult online reviews for information when they consider buying a new product online, and 40% "always" or "almost always" consult such reviews. Aaron Smith & Monica Anderson, Online reviews, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/.

67.     Studies and surveys consistently show that consumers place extraordinary trust in online product reviews. For instance, research has shown that 49% of online consumers now trust online reviews as much as personal recommendations from friends and family. Jamie Pitman, Local        Consumer        Review        Survey        2022,        BRIGHTLOCAL, https://www.brightlocal.com/research/local-consumer-review-survey/. The mere presence of reviews on an online product page can also increase conversion by up to 270% when compared to product pages that do not display reviews. Tom Collinger, How Online Reviews Influence Sales, NORTHWESTERN        UNIVERSITY,        https://spiegel.medill.northwestern.edu/how-online-reviewsinfluence-sales/. Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products on online marketplaces. Megan Henney, FTC cracking down on fake Amazon reviews, FOX BUSINESS, Feb. 28, 2019, https://www.foxbusiness.com/technology/ftc-cracking-down-on-fakeamazon-reviews (quoting a press release from the director of the FTC).

68.     Consumers also pay special attention to negative online reviews of products because negative reviews are generally outnumbered by positive reviews and consumers believe negative reviews are particularly trustworthy due to their scarcity. *See* Caroline Beaton, Why You

Can't Really Trust Negative Online Reviews, THE NEW YORK TIMES, June 13, 2018 https://www.nytimes.com/2018/06/13/smarter-living/trust-negative-product-reviews.html. According to one study, 85% consumers will intentionally seek out negative reviews when shopping online. Faith Hinz, The Growing Power of Reviews, POWERREVIEWS, 2018, https://www.powerreviews.com/wp-content/uploads/2018/03/The-Growing-Power-ofReviews.pdf. As a result, brands are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

69.    Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further. For all of these reasons, negative online reviews can be the death knell for a manufacturer's online product listings.

70.    In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online. The online marketplaces also allow third parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers. As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his or her identity to the consuming public. This effectively prevents the manufacturer, the consumer, and the authorized resellers from being able to reach unauthorized resellers, like Defendants, and address quality concerns.

71.    Many times, these products may be materially different in that they are damaged, expired, sold without guarantee, not in compliance with federal regulations, or of an inferior

quality. However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine and afforded the Brand's warranty protections.

72.     On Amazon all sales of a particular product are sold under a single Amazon Standard Identification Number ("ASIN"), so consumers face an even more significant challenge trying to determine whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

73.     This is precisely the problem that e-commerce websites create: anonymous third parties sell products that may be inferior or defective and consumers are ultimately harmed when they receive non-genuine products. Front Row strives to protect consumers, as does SFI / Klaire, by appointing an exclusive distributor.

74.     Consumers will associate any harm or inferior product with the manufacturer, not the anonymous reseller. For example, when a customer purchases a product on a marketplace and receives a damaged, defective, or poor-quality product, the customer is much more likely to associate that frustration with the brand or manufacturer than the anonymous seller. The consumer may leave a negative review that significantly impacts a brand's reputation, but which likely occurs from a sale by an unauthorized reseller.

### Front Row's and SFI's Reputations Have Been Harmed By Numerous Online Reviews Written by Consumers Who Purchased Poor Quality Products From Unauthorized Sellers on Online Marketplaces

75.     Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor quality products or customer service and leave negative reviews about these experiences on product listings. These negative reviews injure consumer perceptions of a brand's quality and reputation, ultimately causing the brand to suffer damage to its goodwill and lost sales.

76.     Numerous consumers have written negative reviews of Klaire Products that are being offered for sale on online marketplaces. In these reviews, many of which appear on listings of products that have been offered for sale by CY Ventures and possibly other John Doe Defendants, consumers have given misappropriated Klaire Products low "ratings" and complained of receiving products that were damaged, tampered with, stale, unsealed, previously used, missing contents, infested with bugs, and harmful to pets.

77.     For example, the product below has been sold on Amazon by at least one unauthorized seller, Defendant CY Ventures:



78.     As seen in the following sample screenshots of customer reviews, consumers have left negative reviews of this product complaining of receiving products that were previously opened, damaged, improperly stored, tampered with, and spoiled:



loriella

★☆☆☆☆  **An exercise in frustration**
Reviewed in the United States on May 19, 2018
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

It came without a cold pack and with a label over the instructions to keep it refrigerated. My doctor had prescribed this and I found it cheaper on Amazon thinking I was saving myself money. I'm out the money AND the time I invested in taking this.

12 people found this helpful

Helpful  |  Report

Calvin Lovegren

★☆☆☆☆  **Received and the capsules are all spotted with gray spotting**
Reviewed in the United States on December 22, 2020
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

Looks spoiled, have order before, but this bottle, all capsules have gray spotting and looks like spoiling. Stored in hot room????? Afraid to take. Don't think can return.

6 people found this helpful

Helpful  |  Report

kpcinc

★☆☆☆☆  **Don't order this product.... I got ...**
Reviewed in the United States on July 28, 2017
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

Don't order this product....I got it, stored it in my frig and when it came time to open it the capsules were all congealed into a mass of white gunk. Hard to know if has any probiotic power at all. Very disappointing.

29 people found this helpful

Helpful  |  Report

Janet Jiron

★☆☆☆☆  **Oxidized capsules**
Reviewed in the United States on September 6, 2020
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

Product oxidized and needs to be thrown away. Not usable. Do not want to waste my time returning damaged product.
Please refund money ASAP.



9 people found this helpful

Helpful  |  Report

Ken Fleury

★☆☆☆☆  **Could be totally useless due to temperature issues**
Reviewed in the United States on May 13, 2014
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

This is supposed to be a refrigerated product. It was not shipped to reflect that in any way. Especially at this time of year. I have no idea if this even has any potency any more due to the temperature issues.

31 people found this helpful

Helpful  |  Report

79.    Below is a screenshot of another product at least CY Ventures has sold on Amazon:





80.     As seen in the following sample screenshots of customer reviews, consumers have left negative reviews of this product complaining of receiving products that were broken, improperly stored, and ineffective:

 CLINT WILLIAMS

★☆☆☆☆ **This product needs to be refrigerated!**
Reviewed in the United States on October 14, 2024
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

This product needs to be refrigerated! However when I received it, it was a 90° day and it had been sitting in our mailbox for 5 hours, with no cooling system in the shipping packaging. I have used this probiotic from my Dr.'s office before and it is an amazing product! However, after using this bottle, my gut is in knots. I assume it requires refrigeration to keep the bacteria alive. This will not do.



5 people found this helpful

Helpful  |  Report

 Andrea Moore

★☆☆☆☆ **Not certified seller, dead probiotics**
Reviewed in the United States on September 12, 2024
Size: 120 Count (Pack of 1)  |  **Verified Purchase**

I've been taking them for a week now and absolutely zero effect or improvement. They are completely dead and ineffective. The bottle was not cold packed at all. Thrown in the same box with office supplies. I called Klaire Labs/SFI Health was told by SFI Health that Z's essentials is not a certified seller of this product. Unfortunately they cannot help as I did not purchase through them. Very upset as that was $95 wasted.

One person found this helpful

Helpful  |  Report

 Ashley

★☆☆☆☆ **Don't waste your money**
Reviewed in the United States on October 16, 2024
Size: 120 Count (Pack of 1)  |  **Verified Purchase**

I've used this product for years and it's worked great in the past. This last shipment took a long time to be delivered and showed up warm without an ice pack. They also won't accept returns. I just wasted $95.

Helpful  |  Report

 Dee S.

★☆☆☆☆ **Heat sensitive - received out of temperature**
Reviewed in the United States on May 7, 2024
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

Heat sensitive product received warm. I ordered this product on March 30th, it shipped on April 1st and it arrived April 11th. The cool pack inside had long since stopped cooling and my product was not kept cold. I realize this was a shipping issue, but nevertheless, it rendered the product useless. I tried to request a replacement and was met only with the message that this product is not returnable. Nowhere was I able to request a replacement due to a quality issue. Bad customer service (no customer service). Do not buy this heat sensitive product from this company. Very disappointed.

5 people found this helpful

Helpful  |  Report

 Nate

★☆☆☆☆ **Terrible quality!**
Reviewed in the United States on August 25, 2024
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

I used to buy this product for years and I know how it's supposed to work when it's a good quality!! Recently, my 2 last purchases were BAD!! No quality at all!!! Dead probiotics that don't do anything!!! And the customer service is death and mute!!!! No replacement! No returns!! Save your money - Don't buy!!!! They die in the bottle by the time they get to you!

7 people found this helpful

Helpful  |  Report

 R Troop

★☆☆☆☆ **Came damaged**
Reviewed in the United States on September 28, 2024
Size: 60 Count (Pack of 1)  |  **Verified Purchase**

Bottle was completely smashed and glass was everywhere. Didn't come protected enough for an expensive glass bottle of supplements. Also it didn't come with a cold pack. Very disappointed and will go elsewhere to purchase.

Helpful  |  Report

81.    The foregoing reviews are only a small sample of the negative reviews of the products depicted above and of other Klaire Products listed on Amazon that are sold on Amazon storefronts by Unauthorized Sellers, including Defendant CY Ventures.

82.    Importantly, Amazon does not allow product reviews to identify the seller who sold the product that is the subject of the product review. Thus, consumers are likely to believe the reviews are associated with Front Row, the only Authorized Amazon Seller Klaire Products on Amazon. Given that CY Ventures has sold a high volume of products bearing the SFI / Klaire Labs Trademarks on Amazon and are not subject to SFI / Klaire Lab's quality controls, however, it is exceedingly likely that some of the foregoing negative reviews—and the many other similar negative reviews of Klaire Products that CY Ventures have sold on Amazon— were written by customers who purchased products bearing the SFI / Klaire Labs Trademarks from CY Ventures and the John Doe Defendants.

**SFI Has Implemented Quality Controls Throughout Its Authorized Channels of Distribution to Combat the Problems Presented By Online Marketplaces and Ensure Customers Receive the Genuine, High Quality Products They Expect From SFI And Klaire Labs**

83.    The above reviews show how sales of poor quality Klaire Products disappoint SFI / Klaire Labs' consumers and cause significant harm to the reputation and goodwill of SFI / Klaire Labs and its brands.

84.    Because Amazon does not disclose which third-party seller is responsible for receiving negative reviews and consumers are unable to tell the difference, Front Row, the true Authorized Amazon Reseller, suffers both reputational and financial harm and damages.

85.     To protect itself, Front Row, and their mutual consumers from these harms, SFI / Klaire Labs implemented a quality control program that applies to all of its Authorized Sellers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

86.     The goals of SFI / Klaire Labs' quality control program are to minimize the likelihood that poor quality products reach consumers and ensure that consumers who purchase Klaire Products, including consumers who buy online, receive the high quality products and services they expect from products sold under the SFI / Klaire Labs name. By preventing consumers from receiving poor quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the SFI / Klaire Labs Trademarks.

87.     SFI / Klaire Labs' ability to exercise quality controls is particularly important for the products it sells because many Klaire Products are ingested by human beings and there may be health and safety risks associated with products that have not been properly inspected, stored, or handled.

88.     SFI / Klaire Labs abides by its quality control requirements and requires its Authorized Sellers to abide by them as well.

89.     SFI / Klaire Labs' ability to exercise its quality controls is essential to the integrity and quality of Klaire Products, as well as the value of the SFI / Klaire Labs Trademarks and its other intellectual property.

**Authorized Sellers and Front Row May Sell Klaire Products Only Through Specific Channels and Must Adhere to SFI / Klaire Labs' Quality Control and Customer Service Requirements**

90.     SFI / Klaire Labs maintains strict quality controls over Klaire Products by allowing Klaire Products to be purchased by end-user consumers only from Authorized Sellers. SFI / Klaire Labs' Authorized Sellers include Klaire Labs, Authorized Resellers (HCPs only), and Front Row.

91.     All of SFI / Klaire Labs' Authorized Sellers are permitted to sell Klaire Products only in certain channels and are required to abide by the SFI / Klaire Labs Rules. Thus, every Authorized Seller that sells Klaire Products is subject to SFI / Klaire Labs' quality control requirements.

92.     SFI / Klaire Labs carefully vets prospective Authorized Sellers to ensure that only those applicants with a reputation for and a commitment to quality are permitted to become Authorized Sellers of Klaire Products.

93.     The SFI / Klaire Labs Rules require Authorized Sellers and Front Row to purchase Klaire Products and services only from SFI / Klaire Labs directly or from Authorized Distributors per the applicable policy. This restriction ensures that the chain of custody can be established for all Klaire Products sold to consumers by Authorized Sellers, and thus prevents unsafe or unsanitary products, secondhand goods, or other low-quality products from entering into the distribution chain.

94.     The SFI / Klaire Labs Rules also limit to whom and where Authorized Sellers may sell Klaire Products. To prevent persons outside of SFI / Klaire Labs' quality controls from acquiring and reselling Klaire Products, the SFI / Klaire Labs Rules prohibit Authorized Sellers from selling Klaire Products to any third party who is not an Authorized Seller and who intends to resell the Products. Authorized Sellers are permitted to sell Klaire Products only to end-user consumers or, in certain circumstances, to other Authorized Sellers.

95.     Given the many perils of unauthorized online sales as described above, Authorized Sellers are also prohibited from selling Klaire Products on any website they do not themselves own and operate unless they first apply for and receive written approval from SFI / Klaire Labs.

96.     These restrictions are essential to SFI / Klaire Labs' ability to exercise its quality controls over Klaire Products because they prevent Unauthorized Sellers from obtaining and reselling Klaire Products and allow SFI / Klaire Labs to know where all of its products are being sold online by Authorized Sellers. If a quality issue arises through an online sale, SFI / Klaire Labs can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately. SFI / Klaire Labs is unable to take such action against Unauthorized Sellers because it does not know who those sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

97.     In addition to restricting where and how Authorized Sellers can sell SFI / Klaire Labs Products, the SFI / Klaire Labs Rules also require Authorized Sellers to follow numerous quality control requirements related to the inspection, handling, and storage of Klaire Products.

98.     To ensure that customers receive the genuine and high quality products they expect from SFI / Klaire Labs, the SFI / Klaire Labs Rules require Authorized Sellers to inspect all Klaire Products for any damage, defects, evidence of tampering, and other non-conformance and to remove all such products from their inventory. Authorized Sellers are prohibited from selling damaged or defective products and are required to report any discovered defects to SFI / Klaire Labs to assist it with identifying any product quality issues.

99.     Authorized Sellers must also regularly inspect their inventory for any products that are expired or within 30 days of expiration ("Not-Current Products"), and not sell any Not-Current Products to consumers.

100.     The SFI / Klaire Labs Rules also require that Authorized Sellers store Klaire Products in a cool dry place, away from direct sunlight, and in accordance with other guidelines issued by SFI / Klaire Labs. These requirements help ensure that Klaire Products are stored properly and are not damaged prior to being shipped to the consumer. Authorized Sellers must also manage product inventory on a "first-in, first-out" (FIFO) basis, with older inventory being sold before newer inventory of the same product.

101.     To avoid consumer confusion and ensure that customers receive genuine Klaire Products, Authorized Sellers must sell Klaire Products in their original packaging and are prohibited from relabeling, repackaging, or altering Klaire Products or any accompanying label, literature, or safety-related information without SFI / Klaire Labs' consent. Authorized Sellers are prohibited from reselling any products that have been returned, opened, or repackaged.

102.     Authorized Sellers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on Klaire Products, including any serial number, UPC code, or other identifying information.

103.     The SFI / Klaire Labs Rules give SFI / Klaire Labs the right to monitor and audit Authorized Sellers by inspecting their facilities and records relating to Klaire Products to ensure their compliance with SFI / Klaire Labs' quality control requirements. During any such investigation, Authorized Sellers must disclose information regarding their handling procedures and the identities of all their sources of all Klaire Products.

104.     Authorized Sellers must also cooperate with SFI / Klaire Labs with respect to any product recall or other consumer safety information dissemination effort conducted by SFI / Klaire Labs regarding Klaire Products.

105.    The SFI / Klaire Labs Rules also require Authorized Sellers to provide various customer services to their customers. For example, Authorized Sellers must familiarize themselves with the features of all Klaire Products kept in their inventory so they can advise customers on the selection of Klaire Products best suited to their needs and the safe use of those products.

106.    SFI / Klaire Labs' quality control and customer service requirements are legitimate and substantial and have been implemented so that SFI / Klaire Labs can control the quality of goods manufactured and sold under the SFI / Klaire Labs Trademarks, as well as to protect consumers as well as the value and goodwill associated with the SFI / Klaire Labs Trademarks.

107.    SFI / Klaire Labs' quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality and unsafe products. Consumers would find it material and relevant to their purchasing decision to know whether a Klaire Product they were considering buying was being sold by an Authorized Seller who is subject to SFI / Klaire Labs' quality control and customer service requirements or whether the product is being sold by an unauthorized seller who does not abide by SFI / Klaire Labs' quality controls and over whom SFI / Klaire Labs is unable to exercise its quality controls.

**Given the Flood of Poor Quality Products Being Sold Online and Consumers'
Inability to Inspect Such Products Before Purchase, SFI / Klaire Labs Imposes Additional
Requirements on Front Row Because They Sell Online**

108.    As shown in the consumer reviews cited above, Klaire Products sold online are more susceptible to quality and authenticity problems, as consumers cannot see products before buying them. These problems are especially severe on online marketplaces such as Amazon, where sellers can conceal the fact that they are an unauthorized seller and where many sellers may share a single product listing page.

109.    Given these heightened risks to consumer satisfaction and the value of its trademarks that are posed by online sellers, SFI / Klaire Labs imposes additional quality control requirements on Front Row because Front Row is permitted to sell Klaire Products online.

110.    The SFI / Klaire Labs Rules allow Authorized Sellers to sell Klaire Products to end-user consumers only through "Permissible Websites" and "Authorized Websites." These rules allow SFI / Klaire Labs to oversee all Authorized Sellers who sell Klaire Products online.

111.    A "Permissible Website" is a website that: (1) is operated by an Authorized Seller in the Authorized Seller's own legal name or registered fictitious name, and (2) lists the Authorized Seller's mailing address, telephone number, and email address.

112.    Authorized Sellers must receive prior written approval from SFI / Klaire Labs before they can sell Klaire Products on any website that does not meet the criteria of a Permissible Website. To obtain this approval, Authorized Sellers must submit applications in which they provide information about their business, identify all their sources of Klaire Products, and list the specific websites where they wish to sell products. Applicants then undergo vetting by SFI / Klaire Labs that includes thorough review of their business operating business record and online review history. A website that SFI / Klaire Labs permits an Authorized Seller to use through this process is called an "Authorized Website."

113.    Online marketplaces, including Amazon, do not qualify as "Permissible Websites" because they are operated by third parties rather than a particular Authorized Seller. Accordingly, Authorized Sellers are prohibited from selling on any online marketplace, including Amazon, unless they are vetted by SFI / Klaire Labs and specifically approved to sell on an online marketplace. Front Row is the only seller vetted by SFI / Klaire Labs and specifically approved to sell on the Amazon platform.

114.     The SFI / Klaire Labs Rules impose numerous additional requirements on Authorized Sellers who sell Klaire Products on Permissible Websites or Authorized Websites (collectively, "Authorized Online Sellers").

115.     For example, Authorized Online Sellers must use images of Klaire Products that are provided or approved by SFI / Klaire Labs and keep product descriptions up to date. Authorized Online Sellers are also prohibited from advertising any Klaire Product they do not carry in their inventory.

116.     The SFI / Klaire Labs Rules prohibit Authorized Online Sellers from selling anonymously and instead require them to state their business name and current contact information on all websites where they sell, while not giving any appearance that the website is operated by SFI / Klaire Labs or another third party. These requirements allow consumers of Klaire Products to understand the nature of the seller from whom they are purchasing and enable consumers to contact the seller if any quality issues arise. These requirements also allow SFI / Klaire Labs to protect the public from the sale of poor quality or counterfeit Klaire Products because it allows for easy detection of any Authorized Online Seller that sells poor quality or counterfeit goods.

117.     Authorized Online Sellers who sell Klaire Products on Authorized Websites may sell products only on the website(s) and under the name(s) specifically approved by SFI / Klaire Labs. These requirements ensure that the specific products that the Authorized Online Seller has that meet SFI / Klaire Labs' quality standards will be those that are shipped to the customer in fulfillment of an order, rather than other products that are outside of SFI / Klaire Labs' quality controls.

118.     In light of the unique quality control challenges presented by online marketplaces like Amazon, and to further SFI / Klaire Labs' efforts and ability to assure product quality and

adherence to its quality control standards, protect the value and goodwill associated with the SFI / Klaire Labs Trademarks, and prevent consumer confusion, SFI / Klaire Labs has approved only one Authorized Seller, Plaintiff, Front Row to sell on the Amazon marketplace ("Front Row"). By limiting authorized sales of Klaire Products on Amazon sales to a single Authorized Seller, SFI / Klaire Labs is able to closely monitor its products being sold on Amazon and promptly address any issues directly with its one approved seller.

119.    Front Row was vetted by SFI / Klaire Labs to ensure that it meets SFI / Klaire Labs' high standards to be an Authorized Seller. Front Row has a recognized business that meets applicable criteria (i.e. credit, sales history, facility requirements) and an acceptable business operating record, online review history, and customer feedback score.

120.    To obtain authorization to sell Klaire Products on Amazon, Front Row entered into a contract in which it agreed to adhere to quality control and customer service requirements that are even more extensive than the requirements that SFI / Klaire Labs imposes on its Authorized Online Sellers that sell on other websites.

121.    For example, Front Row is required to apply unique "FNSKU" labels to all Klaire Products it provides to Amazon for fulfillment to customers via Amazon's "Fulfillment by Amazon" service.

122.    SFI / Klaire Labs also requires Front Row to conduct a rigorous inspection process of all Klaire Products in its inventory. This process includes inspections of pallets and cases, multiple inspections of individual products for damage, signs of tampering, and other defects. The inspection process includes multiple redundant steps to minimize the likelihood that any product flaw is overlooked. Any flawed products that are discovered are removed from inventory and are not sold to customers.

123.    Front Row is also required to provide SFI / Klaire Labs a report each month ("Amazon Performance Report") that includes extensive information about its adherence to SFI / Klaire Labs' quality control requirements and feedback received from customers. Among other information, the Amazon Performance Report must include: (i) Front Row's "Order Defect Rate" and "Return Dissatisfaction Rate" as determined by Amazon, which are calculated in part through negative feedback received from Front Row's customers and evidence that the Front Row shipped poor quality products to Amazon fulfillment centers; and (ii) counts of all positive, neutral, and negative written reviews the Front Row has received from its customers. The Amazon Performance Report is a critical component of SFI / Klaire Labs' quality controls because it allows SFI / Klaire Labs to closely monitor Front Row's compliance with its heightened quality controls and take swift remedial action if Front Row falls out of compliance. SFI / Klaire Labs cannot do this for products sold by any Unauthorized Sellers on Amazon such as Defendants.

124.    Front Row is also required to have Amazon return any unfillable or unsellable Klaire Products to SFI / Klaire Labs or Front Row so that the products can be disposed of in accordance with SFI / Klaire Labs' instructions rather than a different channel where the products could potentially be relisted for sale to unknowing customers.

125.    Front Row also must take appropriate steps to address customer feedback and cooperate with SFI / Klaire Labs in investigating any negative reviews received from customers. Further, as is the case for all of SFI / Klaire Labs' Authorized Sellers, SFI / Klaire Labs' Agreement with Front Row gives it the right to inspect the facilities and records of Front Row to ensure it is complying with SFI / Klaire Labs' quality control and customer service requirements.

126.    The additional quality control requirements that SFI / Klaire Labs imposes on its Authorized Online Sellers and Front Row are legitimate and substantial and have been

implemented to allow SFI / Klaire Labs to carefully control the quality of Klaire Products that are

sold online and to quickly address any quality issues that may arise.

127.    SFI / Klaire Labs' additional quality controls are also material, as they have been

implemented to ensure that consumers purchasing Klaire Products online and on Amazon receive

genuine, high-quality Klaire Products that abide by SFI / Klaire Labs' quality controls. Consumers

purchasing Klaire Products online and on Amazon would find it relevant to their purchasing

decision to know whether a product they are buying is vended by an Authorized Online Seller who

is subject to, and abides by, SFI / Klaire Labs' quality controls.

### SFI / Klaire Labs Monitors and Audits Its Authorized Online Sellers To Ensure They Comply With Its Quality Control Requirements

128.    SFI / Klaire regularly audits its Authorized Online Sellers to ensure they are

adhering to its quality control requirements.

129.    As part of its Auditing Program, SFI / Klaire checks to make sure that, among other

requirements, the websites: (i) clearly state an Authorized Online Seller's legal name or registered

fictitious business name and provide contact information for the Authorized Online Seller; (ii) do

not give the appearance that they are operated by SFI / Klaire or a third party; (iii) do not display

any content that could be detrimental to the SFI / Klaire Labs and its brands; (iv) do not make any

representations regarding Klaire Products that are misleading; (v) exclusively contain images of

Klaire products and product descriptions that are supplied or authorized by SFI / Klaire Labs and

up-to-date; and (vi) have a mechanism through which customers can provide feedback.

130.    SFI / Klaire Labs also periodically inspects online reviews of Klaire Products and

Authorized Online Sellers that appear on Authorized Websites. If SFI / Klaire Labs discovers

reviews asserting that Authorized Online Sellers provided poor customer service, sold poor quality

Klaire Products, or otherwise did not adhere to the quality control and customer service

requirements that all Authorized Sellers are required to follow, SFI / Klaire Labs communicates

with the responsible Authorized Online Sellers to determine the cause(s) of the negative reviews,

take any necessary corrective action, and secure the removal of negative reviews, if possible.

131.    If SFI / Klaire Labs discovers that an Authorized Online Seller is selling Klaire

Products of poor quality or otherwise not adhering to SFI / Klaire Labs' quality control or customer

service requirements, SFI / Klaire Labs may conduct an investigation to determine the source of

the problem. The SFI / Klaire Labs Rules require that Authorized Online Sellers cooperate with

SFI / Klaire Labs' investigation. Based on what its investigation reveals, SFI / Klaire Labs has the

right to cease selling its products to an Authorized Online Seller and to suspend or terminate its

status as an Authorized Seller of SFI / Klaire Labs.

#### Genuine SFI / Klaire Labs Products Come with a 45 Day Satisfaction Guarantee – Products Sold By Unauthorized Sellers Do Not

132.    SFI / Klaire Labs also provides customers who purchase genuine Klaire Products

from Authorized Sellers with the "SFI / Klaire Labs Product Promise," which is a 45-day

satisfaction guarantee ("SFI / Klaire Labs Satisfaction Guarantee").

133.    Under the SFI / Klaire Labs Satisfaction Guarantee. a customer is able to receive a

replacement product or full refund of the purchase price of a SFI / Klaire Labs product within 45

days of the original purchase date if the customer is dissatisfied with the product for any reason.

The complete terms of the SFI / Klaire Labs Product Promise can be viewed at

https://us.sfihealth.com/legal/shipping-returns/ and are incorporated herein.

134.    SFI / Klaire Labs extends the SFI / Klaire Labs Satisfaction Guarantee only to

products that were sold by sellers who are subject to SFI / Klaire Labs' quality controls. Because

products sold by Unauthorized Sellers are not subject to SFI / Klaire Labs' quality controls and

SFI / Klaire Labs cannot ensure the quality of such products, the SFI / Klaire Labs Satisfaction

Guarantee does not cover Klaire Products sold by Unauthorized Sellers, including CY Ventures and John Doe Defendants.

**Defendants Are Unauthorized Sellers and Are Illegally Selling Klaire Products**

135.   Because the unauthorized sale of Klaire Products over the internet threatens the reputation and goodwill associated with the SFI / Klaire Labs Trademarks, Front Row is required to actively monitor the sale of Klaire Products online.

136.   In the course of this monitoring, Front Row discovered that high volumes of products were being illegally sold on Amazon through a storefront called "Z's Essentials".

137.   Through investigation, Front Row identified CY Ventures as the operators of the "Z's Essentials" storefront and the party responsible for the unlawful sale of products bearing the SFI / Klaire Labs Trademarks through the "Z's Essentials" storefront. At the time of Front Row's discovery of the "Z's Essentials" storefront and up to the time of filing, the listed "Business Name" of the operator of the storefront is "CY Ventures LLC" as depicted below. There is a limited liability organized under New York law called CY Ventures LLC that lists 50 Holt Drive, as the company agent. The address depicted below is listed on Amazon at https://www.amazon.com/sp?seller=A3G5NP1LKGJ9F6:

## Detailed Seller Information
**Business Name:** CY Ventures LLC

**Business Address:**

50 Holt Dr

Stony Point

New York

10980

US

138.    Demand letters were sent by Front Row to CY Ventures on May 13, 2024 via email and certified mail; their counsel, Rotberg, confirmed receipt and representation on May 16, 2024; a final notice of infringement was sent on August 16, 2024; and a final preservation letter was sent on August 22, 2024 expressly disclosing the existence of the relationship between SFI / Klaire Labs and Front Row and explaining the tortious interference and damages caused by CY Ventures' sales activities. The letters also explained that Defendants are selling products through their Amazon Storefront that are materially different from genuine products sold by SFI's Authorized Resellers and that are not subject to and do not abide by and interfere with SFI's Quality Controls. The letters demanded that Defendants permanently cease selling Klaire Products on the Amazon platform and disclose every person and entity that provided Defendants with the products they have sold.

139.    To date, Defendants and their counsel have refused to provide any response in writing to Front Row's attempts to resolve this matter amicably or to the numerous cease and desist letters sent and to the preservation letter.

140.    Defendants continue to sell Klaire Products on the Amazon platform without any abatement.

141.    Defendants' disregard of the cease and desist letters and continued sale of non-genuine products, despite being informed of their unlawful conduct, demonstrates that they are acting intentionally, willfully and maliciously.

142.    Defendants have sold and continue to sell high volumes of Klaire Products.

143.    Through their storefronts on the highly interactive Amazon website, Defendants accept and fulfill orders from New York residents for products bearing the SFI / Klaire Labs

Trademarks and cause substantial quantities of infringing products bearing the SFI / Klaire Trademarks to be shipped to persons located in New York through the regular course of business.

144.    As of the time of filing, CY Ventures' Amazon Storefront is called "Z's Essentials". Amazon allows storefront operators to change the names of their storefronts, but every storefront on Amazon is assigned a "Merchant ID Number" that does not change over time even if the formal "name" of a storefront is changed. The Merchant ID number for Defendants' Amazon Storefront is A3G5NP1LKGJ9F6.[6] Even if Defendants change the name of their Amazon Storefront at some time in the future, their storefront can always be accessed at the following link that includes the storefront's Merchant ID number: https://www.amazon.com/sp?seller=A3G5NP1LKGJ9F6.

**John Doe HCP Defendants Are Tortiously Interfering with Front Row's Contract With SFI**

145.    As discussed, SFI only allows Klaire Products to be sold by Authorized Sellers.

146.    SFI has entered into agreements with all of its Authorized Sellers that prohibit John Doe HCP Defendants from selling Klaire Products to entities or persons who are Unauthorized Sellers and who the John Doe HCP Defendants know or have reason to know are going to resell the products.

147.    Unauthorized Sellers have sold and are continuing to sell a high volume of non-genuine, unauthorized offers for Klaire Products on the internet. The only possible way Unauthorized Sellers can be obtaining the volume of products they are reselling is by purchasing them from one or more John Doe HCP Defendants.

148.    By breaching their contract with SFI as an HCP, John Doe HCP Defendants have induced SFI to breach their agreement with Front Row.

---

[6] Defendant's storefront can be accessed here: https://www.amazon.com/sp?seller=A3G5NP1LKGJ9F6.

149.    John Doe HCP Defendants know that Front Row's Agreement with SFI exists because it is referenced in the HCP Terms and Conditions referenced above.

150.    John Doe HCP Defendants are aware of the Terms and Conditions they have contractually agreed to when registering with SFI as an HCP.

151.    All John Doe HCP Defendants contractually agree to adhere to the HCP Purchase Terms and Conditions.

152.    The HCP Defendants Purchase Terms and Conditions, among other things, prohibit internet resale and reseller / distributor resale.[7]

153.    The HCP Purchase Terms and Conditions also acknowledge Front Row as the sole Authorized Amazon Seller.

154.    The HCP Purchase Terms and Conditions also require John Doe HCP Defendants only to sell products directly to their patients in quantities that are reasonable for the level of treatment required by the individual patient.

155.    John Doe HCP Defendants have been aware of the terms of the HCP Purchase Terms and Conditions since the time they established their HCP account status with SFI / Klaire.

156.    John Doe HCP Defendants are aware they were and continue to cause SFI / Klaire to breach its agreement with Front Row because John Doe HCP Defendants are aware of the exclusivity provided to Front Row for Amazon.

157.    John Doe HCP Defendants intentionally, knowingly and willfully interfered with Front Row's Agreement with SFI / Klaire by diverting Klaire Products in breach of the HCP

---

[7] See, https://us.sfihealth.com/legal/sales-distribution. These terms are integrated within the written agreements in place between SFI and all approved HCPs.

Purchase Terms and Conditions to Unauthorized Sellers, thereby causing SFI / Klaire to breach the exclusivity terms of the Agreement.

158.    In interfering with Front Row's Agreement, John Doe HCP Defendants acted without justification and with a wrongful purpose. John Doe HCP Defendants illegally distributed Klaire Products to Unauthorized Sellers and in doing so breached their agreement with SFI / Klaire, causing SFI / Klaire to then breach its Agreement with Front Row (which requires SFI / Klaire's cooperation to ensure its affiliates comply with the exclusivity provisions therein), thereby committing an independent tort.

159.    John Doe HCP Defendants are not parties to the Agreement between Front Row and SFI / Klaire.

**Front Row Has Suffered Substantial Harm As a Result of John Doe HCP Defendants Conduct**

160.    As set forth above, the unauthorized sale of Klaire Products to Unauthorized Sellers caused and continues to cause significant harm to Front Row.

161.    When a consumer receives a non-genuine, damaged, or poor-quality product from an Unauthorized Seller, the consumer associates that negative experience with Front Row. As such, John Doe HCP Defendants' ongoing illegal diversion of Klaire Products harms Front Row, its reputation, and its finances.

162.    Front Row has suffered and will continue to suffer significant monetary harm as a result of the John Doe HCP Defendants' actions, including, but not limited to, loss of sales and damages to its existing and potential business relations.

163.    Front Row has suffered and will continue to suffer irreparable harm as a result of the John Doe HCP Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business, customer relationships, and integrity.

164.    Front Row is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine Klaire Products causing continued irreparable harm to Front Row's reputation, goodwill, business, customer relationships, and integrity.

165.    Furthermore, Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

166.    Defendants' willful diversion of the Products and continued pattern of misconduct demonstrates intent to harm Front Row.

## FIRST CAUSE OF ACTION
### False Advertising as to Defendants CY Ventures and Nissanian
### 15 U.S.C. §§ 1125(a)(1)(A) and 1125(a)(1)(B)

167.    Front Row hereby incorporates the allegations contained in the foregoing paragraphs as if stated fully herein.

168.    As set forth above, CY Ventures and Nissanian are selling, via advertisements on their Amazon Storefront, non-genuine products bearing the SFI / Klaire Labs Trademarks that are materially different from genuine Klaire Products.

169.    SFI / Klaire must abide by the strict and detailed guidelines issued by the Food and Drug Administration ("FDA") in order to lawfully distribute its supplement products. These include having written standard operating procedures ("SOPs"), employee training, quality control personnel, product retainment, sanitation procedures, climate control procedures, and so forth.

170.     In addition, any facility that holds and/or distributes dietary supplements is required to register with the FDA as a food facility that subjects the facility to inspection pursuant to the Public Health Security and Bioterrorism Preparedness and Response Act of 2002.

171.     Further, distributors of dietary supplements are required to comply with the Dietary Supplement and Nonprescription Drug Consumer Protection Act. This federal law mandates that distributors and retailers of dietary supplements maintain written SOPs for receiving, documenting, obtaining, and reporting to the FDA, when necessary, information regarding adverse events associated with the use of a dietary supplement.

172.     As a condition of selling on Amazon, Defendant, like all sellers on the platform, agreed to the terms and conditions detailed in Amazon's Business Solutions Agreement ("BSA") and Amazon's Policies and Program Terms.

173.     Amazon's Policies and Program Terms include their "Product Detail Page Rules" and "ASIN Creation Policy." Each Product Detail Page is assigned a unique Amazon Standard Identification Number ("ASIN").

174.     The Product Detail Page Rules require sellers to accurately categorize and describe their products and do not allow sellers to create any duplicate pages for a product that already has an existing page.

175.     Per Amazon policy, a seller that wants to resell a genuine and authentic product must join any existing Amazon listing for that product. By doing so, that seller represents to all potential consumers that their product exactly matches the product detail page and description, and thus must be held to those standards of product quality and authenticity.

176.     In fact, Amazon's condition guidelines policies state that a "new" product comes with the manufacturer's warranty / guarantee.

177.    The Klaire Products sold by Defendants are not authorized by or subject to the quality control standards of The Brands.

178.    The Klaire Products sold by Defendants do not carry the manufacturer's warranty.

179.    The Klaire Products sold by Plaintiff are authorized, subject to the quality control requirements of The Brands, and carry the manufacturer's full warranty.

180.    Under Amazon's definition of "new," Branded Products sold by Plaintiff are new, while those sold by Defendants are not new.

181.    Defendants' listings for its products do not disclose that their products are not new under the Amazon definition.

182.    Defendants' storefront on Amazon does not disclose that they are an Unauthorized Reseller or that their products are not new as Amazon defines that condition.

183.    Defendants' actions deceive and confuse consumers into the purchase of their products, rather than those of Plaintiff, under the false and mistaken belief that the products they buy on Amazon are new and carry the manufacturer's warranty.

184.    Defendants' advertising for the Branded Products omits material representations that make the advertising likely to confuse or mislead prospective customers as to a material characteristic of the Branded Products offered by Defendants.

185.    Further, because Unauthorized Sellers are not privy to the same policies and procedures as Authorized Sellers, it is impossible for them to represent that their products exactly match the product detail page and description as required. They have no knowledge of key information pertaining to the quality of the products from the manufacturer and Authorized Resellers; for example, what temperature Authorized Sellers must keep their products at, what

storage conditions they are required to keep, and any end user training they have engaged in with the brand owner.

186.    By listing and reselling Klaire Products on Amazon, Defendants are representing to consumers that their products originate from and are approved by SFI / Klaire when that is not the case. This assumption implicitly guarantees the products' quality, safety, and compliance with FDA guidance, which is an especially dangerous misrepresentation from Unauthorized Resellers because the products here are intended for human consumption.

187.    The misrepresentation Defendants implicitly make by joining SFI / Klaire's exclusive listings is material because it has the potential to cause and actually causes consumer confusion. Consumers who expect the utmost quality from Klaire Products may experience negative side effects and brand disillusionment from receiving products that have not been kept and maintained pursuant to the brand's strict protocols. SFI / Klaire, through limiting its distribution network and bringing this action, seeks to protect consumers and its brand from these preventable harms.

188.    CY Ventures and Nissanian's sale of non-genuine Klaire Products causes financial and reputational harm to Front Row as set forth above.

189.    Defendants' listings for their products do not disclose that their products do not comply with the FDA regulations cited above.

190.    Defendants' storefront on Amazon does not disclose that Ocean Blue is an unauthorized reseller or that its products do not comply with the FDA regulations cited above.

191.    Defendants' actions deceive and confuse consumers into the purchase of their products, rather than those of Plaintiff, under the false and mistaken belief that the products they buy on Amazon are safe and comply with all federal consumer safety laws.

192.    Defendants' advertising for the Branded Products omits material representations that make the advertising likely to confuse or mislead prospective customers as to a material characteristic of the Branded Products offered by Defendants.

193.    CY Ventures and Nissanian's conduct constitutes false advertising pursuant to the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and 1125(a)(1)(B).

194.    Front Row is entitled to injunctive relief under 15 U.S.C § 1116 because it has no other adequate remedy at law for CY Ventures and Nissanian's false advertising and, unless CY Ventures and Nissanian are enjoined permanently, Front Row will suffer irreparable harm.

195.    Front Row is entitled to enhanced damages and attorneys' fees under 15 U.S.C. §1117(a) because CY Ventures and Nissanian willfully, intentionally, maliciously and in bad faith engaged in false advertising.

## SECOND CAUSE OF ACTION
**Tortious Interference with Contract and Business Relations as to John Doe HCPs**

196.    Front Row hereby incorporates the allegations contained in the foregoing paragraphs numbered 1 through 165 as if stated fully herein.

197.    Klaire Products are sold to the public exclusively via John Doe HCPs and Front Row, constituting SFI / Klaire's network of Authorized Sellers.

198.    SFI / Klaire has entered into valid and enforceable agreements with each John Doe HCP to sell Klaire Products. These agreements specifically prohibit John Doe HCPs from selling Klaire Products to Unauthorized Sellers.

199.    John Doe HCPs are the only possible source of the products sold on Amazon by Unauthorized Sellers due to the volume of products being sold by Unauthorized Sellers.

200.    By diverting products to Unauthorized Sellers for resale on the Internet, in breach of the HCP Purchase Terms and Conditions, John Doe HCPs have caused SFI / Klaire to breach its agreement with Front Row as SFI / Klaire is required to ensure its affiliates comply with the appointment of Front Row as SFI / Klaire's Exclusive Amazon Seller.

201.    John Doe HCPs have known that Front Row's contract with SFI / Klaire requires the company to provide exclusivity on the Amazon platform through their establishment as an HCP with SFI / Klaire because the Front Row relationship is disclosed in the HCP Terms and Conditions.

202.    Despite having knowledge that Front Row is the Exclusive Authorized Amazon seller for Klaire Products, John Doe HCPs intentionally, knowingly and willfully interfered with Front Row's Agreement with SFI / Klaire by inducing SFI / Klaire to breach the Agreement and supply the John Doe HCPs with inventory specifically intended for resale to Amazon sellers.

203.    In interfering with Front Row's Agreement, John Doe HCPs acted without justification and with a wrongful purpose because breaching the HCP Purchase Terms & Conditions is wrong and unlawful. John Doe HCPs purchased products from SFI / Klaire under the fraudulent guise that the items would be resold only to individual patients – instead, the John Doe HCPs diverted their inventory to Unauthorized Amazon Sellers, which ultimately caused SFI / Klaire to breach its agreement with Front Row by failing to ensure the compliance of its Affiliate(s) and thereby committed an independent tort.

204.    Although Front Row does not know yet which John Doe HCPs have induced SFI / Klaire to breach the Agreement with Front Row – and indeed cannot learn that information with certainty until it is able to take discovery from John Doe HCPs in this action - John Doe HCPs are

aware of their unlawful distribution and are on notice of the basis for the Tortious Interference claim herein.

205.    John Doe HCPs are not parties to the Agreement between Front Row and SFI / Klaire.

206.    John Doe HCPs' actions have caused injury to Front Row for which Front Row is entitled to compensatory damages in an amount to be proven at trial.

207.    The injury to Front Row is immediate and irreparable, as Front Row's reputation and relations have been damaged among its consumers and other brand partners.

208.    Front Row is also entitled to recover punitive damages because John Doe HCPs have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of Front Row's rights.

### THIRD CAUSE OF ACTION
**Tortious Interference with Contract, Business Relations, and Prospective Economic Advantage as to CY Ventures and Nissanian**

209.    Front Row hereby incorporates the allegations contained in the foregoing paragraphs numbered 1 through 165 as if stated fully herein.

210.    As discussed, SFI / Klaire allows Klaire Products to be sold only by Authorized Sellers.

211.    SFI / Klaire has entered into agreements with all of its Authorized Sellers that prohibit Authorized Sellers from selling Klaire Products to entities or persons who are not Authorized Sellers.

212.    SFI / Klaire Labs selected Front Row as its Exclusive Amazon Seller after an in depth evaluation of multiple criteria necessary to qualify Front Row for this role.

213.    Front Row has entered into a valid and enforceable agreement with SFI / Klaire to be the exclusive seller of Klaire Products on Amazon.

214.    The Agreement prohibits SFI / Klaire from authorizing any other resellers for the Branded Products on Amazon.

215.    Defendants are not an Authorized Seller of Klaire Products. Despite this, Defendants have sold a high volume of Klaire Products.

216.    Defendants obtain their inventory for Klaire Products in volume from one or more authorized distributors or HCPs using deceptive and unfair practices.

217.    Defendants are not subject to the quality control provisions required by The Brands or subject to their product recall safety provisions.

218.    The Exclusive Contract between Front Row and SFI / Klaire is intended to promote the potential for a mutually beneficial economic relationship between Front Row and SFI / Klaire, i.e., to grow the SFI / Klaire Labs brand(s) together on the Amazon platform for the purpose of increasing revenues, profits, sales and brand awareness for both Front Row and SFI / Klaire.

219.    Front Row's Exclusive Contract with SFI / Klaire is a contract of limited duration, and renewal is based on Front Row's performance in enforcing the brand's reputation and intellectual property, as well as overall brand satisfaction. Defendants' actions directly interfere with the potential of the contract's renewal because they have a detrimental impact on Front Row's ability to enforce the SFI / Klaire Rules and guarantee brand satisfaction for only those products that can be described as genuine and authentic.

220.    A significant consideration for SFI / Klaire and Front Row in the formation of the Exclusive Contract was Front Row's ability to help SFI / Klaire grow its revenues and performance

metrics. Defendants' activities directly interfere with this goal by disrupting the efficacy of SFI / Klaire's network of Authorized Sellers and causing consumer confusion by widely distributing materially different Klaire Products.

221.    Defendants have sold and are continuing to sell a high volume of products bearing the SFI / Klaire Trademarks on the Internet. The only plausible way Defendants could be obtaining the volume of products they are reselling is by purchasing them from one or more Authorized Sellers. Accordingly, upon information and belief, Defendants have purchased products from Authorized Sellers for the purpose of reselling them on the Internet.

222.    Alternatively, Defendants have fraudulently misrepresented their identity to obtain products illegally under the false pretense that they are an HCP when in fact, they are not.

223.    By purchasing products from John Doe HCPs / Authorized Sellers and then reselling them on the Internet, Defendants caused and induced John Doe HCPs / Authorized Sellers to breach their agreements with SFI / Klaire. This further disrupts the relationship between Front Row and SFI / Klaire because the exclusivity provisions of their Agreement are frustrated by diversion and Unauthorized Sellers.

224.    Defendants have known that SFI / Klaire's contracts with its John Doe HCPs / Authorized Sellers prohibit John Doe HCPs / Authorized Sellers from selling products to non-Authorized Sellers, such as CY Ventures and Nissanian, whom the John Doe HCPs / Authorized Sellers know or have reason to know are going to resell the products.

225.    CY Ventures and Nissanian have known of this prohibition since at least as early as August 27, 2024, as confirmed by their counsel who acknowledged receipt of Plaintiff's cease and desist letters from May 13, 2024, as well as the August 22, 2024 preservation letter and numerous attempts to follow up with hopes of an amicable resolution, which were sent directly to counsel.

226.    Front Row's letters also informed CY Ventures and Nissanian that, by intentionally and via fraudulent means, purchasing Klaire Products from an Authorized Seller for the purpose of reselling them, they were causing a disruption to the relationship between Front Row and SFI / Klaire.

227.    Front Row's letters also informed CY Ventures and Nissanian that if they continued to acquire Klaire Products from Authorized Sellers and resell the products, they would be liable for tortiously interfering with Front Row's prospective economic advantage and business relationships with SFI / Klaire.

228.    Despite being provided with this information, CY Ventures and Nissanian intentionally , knowingly, willfully and wrongfully disrupted the relationship between Front Row and SFI / Klaire by inducing John Doe HCPs to breach their agreements with SFI / Klaire and sell products to CY Ventures and Nissanian to be resold on the Amazon platform.

229.    In disrupting Front Row's relationship with SFI / Klaire, CY Ventures and Nissanian acted without justification and with a wrongful purpose. Defendants purchased Klaire Products from Authorized Sellers – and in doing so, instigated a breach of the Authorized Sellers' agreements with SFI / Klaire – so that Defendants could unlawfully disrupt the relationship and materially damage the value of the Agreement by reselling the Products, thereby committing an independent tort.

230.    Defendants' deceitful purchase of Klaire Products was not simply made in the normal course of business. Ocean Blue does not have an account with SFI / Klaire; thus, Defendants purposefully subverted SFI / Klaire protocols and purchased products that it knew were only permitted to be sold by Authorized Resellers, who are licensed HCPs.

231.    Use of fraudulent means to obtain restricted products is distinct from sourcing widely available products permitted for resale. Defendants do not have any invoices that it can produce to prove the products were sold to it directly by legal means because its procurement of the products is a result of breach of contract by at least one John Doe HCP.

232.    Defendants' fraudulent procurement of Klaire Products that, at all times, were only allowed and intended for resale by licensed HCPs, was wrongful and unlawful irrespective of any economic interest Defendants may have had in such conduct.

233.    Defendants' acquisition of Klaire Products by fraudulent means is demonstrative of the malice inherent in Defendants' conduct. Defendants had to first identify Klaire Products, familiarize themselves with SFI / Klaire's rules regarding the distribution of its products, disregard these rules and nonetheless pinpoint at least one authorized HCP to procure products from, and arrange for the listing and distribution of the unlawfully obtained products, all while doing so willfully and with full knowledge that this conduct was expressly prohibited by SFI / Klaire.

234.    Defendants' actions improperly interfere with Front Row's advantageous and contractual relationship using unlawful means, namely by inducing authorized distributors to breach their restrictive sales clauses with SFI / Klaire, by deceiving those authorized distributors as to the nature of its business, and by using shell companies and / or strawman buyers to circumvent the resale restrictions.

235.    Ocean Blue has no financial stake in the businesses of the authorized distributors of Klaire Products.

236.    Defendants are Plaintiff's competitor in the sales of Klaire Products on Amazon.

237.    Defendants do not have a prior contractual or economic relationship with SFI / Klaire or their authorized HCPs.

238.    Defendants have only a generalized economic interest in soliciting authorized distributors for Klaire Products to purchase products for profit.

239.    Defendants' conduct directly and proximately caused disruption of Front Row's relationship with SFI / Klaire.

240.    Based on its failure to provide assurances and upon information and belief, Defendants intend to cause harm to Front Row and jeopardize its contracts and relationships with SFI / Klaire.

241.    Defendants' direct contravention of purchasing the products from Unauthorized Resellers without approval of SFI / Klaire and / or Front Row were made with the improper motive to harm Front Row and destroy its relations with SFI / Klaire and for the improper purpose of suppressing competition.

242.    Defendants' actions interfered with Front Row's business relationships with SFI / Klaire and proximately caused Front Row's sales of the Klaire Products to diminish and its reputation on Amazon and with SFI / Klaire to be harmed by Defendants' unlawful sales of the Klaire Products.

243.    Defendants' actions interfered with Plaintiff's business relationship with SFI / Klaire and proximately caused a diminution in the effectiveness of its reputation and its sales.

244.    The intentions of Defendants are demonstrated by the fact that Defendants have never offered any assurances that it will discontinue its unlawful and harmful acts.

245.    Defendants' procurement and sales of the Branded Products were made with malice and with ill will towards Front Row.

246.    Front Row suffered actual harm due to the disruption of its relationship with SFI / Klaire caused by CY Ventures and Nissanian.

247.    When a consumer receives a non-genuine, damaged, expired, opened, unsealed or poor-quality product from an Unauthorized Seller such as CY Ventures and Nissanian, the consumer associates the negative experience with the true Authorized Amazon Seller, Front Row. Front Row is required to maintain these quality controls as well as the brand's goodwill on the Amazon platform per the Agreement. As such, CY Ventures and Nissanian's ongoing sales of Klaire Products disrupts the relationship between Front Row and SFI / Klaire.

248.    Front Row suffered and continues to suffer significant monetary harm as a result of CY Ventures and Nissanian's actions, including, but not limited to, loss of sales and damages to its existing and potential business relations.

249.    Front Row has suffered and will continue to suffer irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, and brand integrity as a service provider in the Amazon community.

250.    Front Row is entitled to injunctive relief because, unless enjoined by this Court, CY Ventures and Nissanian will continue to unlawfully sell non-genuine products, thereby causing risks to consumers and continued irreparable harm to Front Row's reputation goodwill, relationships and brand integrity as well as compounding economic harm.

251.    Furthermore, CY Ventures and Nissanian's conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

252.    CY Ventures and Nissanian's willful disruption and continued pattern of misconduct demonstrates intent to harm Front Row.

253.     CY Ventures and Nissanian's actions have caused injury to Front Row for which Front Row is entitled to compensatory damages in an amount to be proven at trial.

254.     The injury to Front Row is immediate and irreparable, as Front Row's reputation and relations have been damaged among its consumers and other brand partners.

255.     Front Row is also entitled to recover punitive damages because CY Ventures and Nissanian have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of Front Row's rights.

256.     Front Row is entitled to damages, costs, and attorneys' fees as allowed by law.

257.     Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## **FOURTH CAUSE OF ACTION**
### **Tortious Interference with Prospective Economic Advantage as to John Doe HCPs**

258.     Front Row hereby incorporates the allegations contained in the foregoing paragraphs numbered 1 through 165 as if stated fully herein.

259.     As discussed, SFI / Klaire allows Klaire Products to be sold only by Authorized Sellers.

260.     SFI / Klaire has entered into agreements with all of its Authorized Sellers that prohibit Authorized Sellers from selling Klaire Products to entities or persons who are not Authorized Sellers.

261.     SFI / Klaire selected Front Row as its Exclusive Amazon Seller after an in depth evaluation of multiple criteria necessary to qualify Front Row for this role.

262. The Exclusive Contract between Front Row and SFI is intended to promote the potential for a mutually beneficial economic relationship between Front Row and SFI / Klaire, i.e., – to grow the SFI / Klaire Labs Brand(s) together on the Amazon platform for the purpose of increasing revenues, profits, sales and brand awareness for both Front Row and SFI.

263. CY Ventures and Nissanian have sold and are continuing to sell a high volume of products bearing the SFI / Klaire Trademarks on the Internet. The only plausible way they could be obtaining the volume of products they are reselling is by purchasing them from one or more John Doe HCPs / Authorized Sellers. Accordingly, upon information and belief, CY Ventures and Nissanian have purchased products from John Does HCPs for the purpose of reselling them on the Internet.

264. John Doe HCPs' sales of products to Unauthorized Sellers on the Internet, disrupts the relationship between Front Row and SFI / Klaire because the promise to provide Front Row Amazon exclusivity per the agreement is frustrated by the product diversion of Klaire Products to Unauthorized Sellers by John Doe HCP Defendants.

265. John Doe HCP Defendants have known that SFI / Klaire's Contracts with Front Row appoint Front Row as the Exclusive Amazon Seller since at least as early as the date they established a relationship as an HCP with SFI / Klaire. This is because the terms and conditions the John Doe HCP Defendants contractually agree to adhere to provide notice that Front Row is the only approved seller on the Amazon Platform.

266. John Doe HCP Defendants are also aware that by breaching their agreements with SFI / Klaire and selling Klaire Products to Unauthorized Sellers for the purpose of reselling them, that they were causing a disruption to the relationship between Front Row and SFI / Klaire.

267.    Despite knowledge of this information, John Doe HCP Defendants intentionally, knowingly, willfully and wrongfully disrupted the relationship between Front Row and SFI / Klaire by engaging in a breach of their agreements with SFI / Klaire and selling products to CY Ventures, Nissanian, and other Unauthorized Sellers to be resold on the Amazon platform.

268.    In disrupting Front Row's relationship with SFI / Klaire, John Doe HCP Defendants acted without justification and with a wrongful purpose. John Doe HCP Defendants sold Klaire Products to Unauthorized Sellers – and in doing so, unlawfully disrupted the relationship, materially damaged the value of the Agreement between Front Row and SFI / Klaire, and breached their agreement with SFI / Klaire in doing so.

269.    Front Row suffered actual harm due to the disruption of its relationship with SFI / Klaire caused by John Doe HCP Defendants.

270.    When a John Doe HCP Defendant purchases products from SFI / Klaire for the sole purpose of breaching their purchase Agreement with SFI / Klaire and diverting the Products to Unauthorized Sellers, it directly disturbs the relationship between Front Row and SFI / Klaire because SFI / Klaire is unable to ensure it is complying with the provisions of the Agreement with Front Row requiring it to ensure that all affiliates of SFI / Klaire comply with the terms of the agreement and cooperation in the mitigation of Unauthorized Sellers in the Amazon channel.

271.    The intentional sale of products in breach of contract is a wrongful act.

272.    When a consumer receives a non-genuine, damaged, expired, opened, unsealed or poor-quality product from an Unauthorized Seller such as CY Ventures and Nissanian, the consumer associates the negative experience with the true Authorized Amazon Seller, Front Row. Front Row is required to maintain these quality controls as well as the brand's goodwill on the Amazon platform per the Agreement. As such, John Doe HCP Defendants' ongoing and illegal

wholesale distribution of Klaire Products in violation of their purchase agreement disrupts the relationship between Front Row and SFI / Klaire.

273.    Front Row suffered and continues to suffer significant monetary harm as a result of John Doe HCP Defendants' actions, including, but not limited to, loss of sales and damages to its existing and potential business relations.

274.    Front Row has suffered and will continue to suffer, irreparable harm as a result of John Doe HCP Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, and brand integrity as a service provider in the Amazon community.

275.    Front Row is entitled to injunctive relief because, unless enjoined by this Court, John Doe HCP Defendants will continue to unlawfully distribute wholesale, non-genuine Klaire Products, causing risks to consumers and continued irreparable harm to Front Row's reputation, goodwill, relationships, and brand integrity, as well as compounding economic harm as Unauthorized Sellers continue to enter the Amazon marketplace as a result.

276.    Furthermore, John Doe HCP Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law. John Doe HCP Defendants' willful disruption and continued pattern of misconduct demonstrates intent to harm Front Row.

277.    John Doe HCP Defendants' actions have caused injury to Front Row for which Front Row is entitled to compensatory damages in an amount to be proven at trial.

278.    The injury to Front Row is immediate and irreparable, as Front Row's reputation and relations have been damaged among its consumers and other brand partners.

279.    Front Row is also entitled to recover punitive damages because John Doe HCP Defendants have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of Front Row's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment as follows:

A.    Judgment in favor of Front Row against all Defendants in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

a.    Prohibiting the Enjoined Parties from advertising or selling, via the Amazon Platform, all products bearing the SFI / Klaire Labs Trademarks;

b.    ˙Prohibiting the Enjoined Parties from using any of the SFI / Klaire Labs Trademarks in any manner, including advertising on the Amazon Platform;

c.    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the SFI / Klaire Labs Trademarks;

d.    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold

by them which contain the SFI / Klaire Labs Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e.  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' Amazon Seller Account any reference to any of Front Row's Products, or any of the SFI / Klaire Labs Trademarks;

f.  Requiring the Enjoined Parties to produce all invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

g.  Requiring the Enjoined Parties to return to Front Row all products bearing the SFI / Klaire Labs Trademarks in their possession, custody, or control.

C.  Early discovery into the specific identities of the John Doe Defendants, including subpoenas to relevant third parties prior to the Rule 26 conference.

D.  Preliminary and permanent injunctions enjoining Defendants, as well as their agents, servants, employees, and attorneys, and other persons in active concert or participation with them, from selling or otherwise supplying Klaire Products to Unauthorized Resellers;

E.  An award of attorneys' fees, costs, and expenses as allowed and stated herein.

F.  Such other and further relief as the Court deems just, equitable and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: February 4, 2025                                   Respectfully submitted,


<u>/s/ *Cory Jay Rosenbaum*</u>

(electronically signed)
C.J. Rosenbaum, Esq
Rosenbaum & Segall, P.C.
780 Long Beach Blvd.,
Long Beach, NY 11561
CJR@AmazonSellersLawyer.com
212-256-1109
NYS Bar #2669133